Good morning, Your Honors. You may please report. Daniel Scott Harawa on behalf of the appellant Fred Watson. I'm going to try to reserve five minutes for rebuttal. Your Honors, Officer Eddie Boyd had a nationally known, well-documented history for violently abusing, unlawfully arresting, and false reporting people who dared to question him. The city of Ferguson hired him anyways. And while on the Ferguson PD, Officer Boyd's unlawful behavior continued. So it's no surprise then that Officer Boyd violated Mr. Watson's First and Fourth Amendment rights when he first pointed a gun at Mr. Watson's head and threatened to shoot him, all because Mr. Watson tried to call the police on him and ask him for his name and badge number. Second, threatened to shoot him. Second, wrote a number of tickets without arguable probable cause in retaliation for Mr. Watson speaking up. And third, searched Mr. Watson's car without any legal justification for doing so. The city of Ferguson would eventually drop all nine charges that Officer Boyd wrote that day, but by then it was too late. Fred Watson, who honorably served our country, lost his security clearance, then his job, and even his home. The district court ended granting some re-judgment and this court should reverse. I'd like to start with the First Amendment retaliatory force claim. Appellants concede that the district court did not even address this claim, which alone is enough for reversal. Now the appellees argue that this court can grant some re-judgment in the first instance in their favor by making two primary arguments. The first argument is that it's not clearly established, they say, that when a Fourth Amendment excessive force claim fails, that a First Amendment retaliatory force claim can proceed. But as this court said in Drath just last year, because this argument was not raised in district court, it's waived right now, and in any event, as the court in Drath continued, and as this court said in Peterson v. Knopp, a Fourth Amendment excessive force claim can fail and a First Amendment retaliatory force claim can proceed. And this court explained why again last year in Laney. A Fourth Amendment excessive force claim deals with objective facts, what a reasonable officer would do. But for a First Amendment retaliatory force claim, motive is key. And there is no reason why Officer Boyd would have pointed his gun at Mr. Watson's head and threatened, I could shoot you and nobody would give a shit, other than retaliation to trim Mr. Watson from speaking any further. So this court can reverse that claim, especially because the district court did not address it. Turning to the First Amendment retaliatory citations claim, Officer Boyd lacked arguable probable cause for at least five of the citations that he issued that day. And part of what the district court got wrong here is that it ignored all of the exculpatory evidence that showed Officer Boyd did not have arguable probable cause under the reasoning that it goes to, and I quote, the sustainability of the charges. As this court said as far back in 1999 in Kewel, as Chief Judge Smith said in Bell in 2020, as this court reiterated just a few months ago in Meadors, when there's exculpatory evidence, that's not only to the sustainability of the charges at trial, that also is relevant to the probable cause inquiry. And here, Officer Boyd wrote Mr. Watson three tickets for not having a Missouri license, registration, or inspection, even though by the time that he wrote those tickets, he knew for a fact, based on the police database, that Mr. Watson was lawfully licensed to drive in Florida, his car was lawfully registered in registration or inspection. Counsel, I have a question or two on that point. Help me understand the record. Did Mr. Watson tell the officer that he had documentation in the vehicle? Yes, Your Honor, that's in appendix 398. Okay, and how did the officer handle, what was the documentation that he said he had? He said his license was in the back seat, in his pants pocket, and the insurance information and registration were in the glove compartment. Okay, and then what happened? How did the officer handle that information? The officer proceeded to place him under arrest, or ordered him out of the car, placed him under arrest, took him to the back of the squad car, then went back to his car and searched his vehicle. Okay, and did he find the documents as represented? Appellants concede that he found the registration. I think in reviewing the record, it didn't like most favorable to Mr. Watson. He also saw that his license was in the car, since it was in plain view by the end of the search. And so, and again, the Regis search that he ran showed that he had a valid, at 946 I believe, showed that he had a valid license of registration from Florida. From Florida? Yes, Your Honor. And he had a Florida license plate? Yes, Your Honor. And this has really kind of bothered me about the case. Is there anything in the record to explain from the officer's standpoint why he didn't just look at the rear of the car and note the Florida tags? Your Honor, he does not give any explanation for why he did not, but one would that you would do your due diligence, which is what this Court has said again and again when dealing with exculpatory evidence, that an officer doesn't have to conduct a mini-trial, but has to do a minimal investigation in order to figure out whether they have probable cause. And it's just, it is hard to believe that a reasonable officer in Officer Boyd's position would believe they have arguable probable cause to write these tickets when they had evidence in their physical possession from verified police databases that Mr. Watson was lawfully registered and licensed in Florida. As for the false statements ticket, there is a genuine dispute, a material fact over what crime Officer Boyd actually charged Mr. Watson with committing. If you look at the official court document from the City of Ferguson, found at Appendix 829, the City of Ferguson said this charge was under 29.21. Appellees don't argue that Officer Boyd had arguable probable cause to satisfy that particular Ferguson subsection. Instead, they point to other documents in the record that says, well, perhaps this ticket was under 29.16. The fact that there's conflicting code sections, again, is a genuine dispute, a material fact that precluded summary judgment in this case. So this Court should reverse on that ticket. And then finally, the failure to obey ticket. A reasonable officer would, it is an open question, this Court didn't really engage in any kind of analysis on this, whether a reasonable officer would believe they have arguable probable cause for failure to obey when Mr. Watson was clearly and undisputably complying with Officer Boyd's order to keep his hands on the wheel after he just reached for his phone and he was threatened with a gun. At that point, when he's ordered to take his hands off the wheel and reach further, there's a genuine dispute, a material fact, whether a reasonable officer would believe they have probable cause for failure to obey in that particular instance. With my remaining couple of minutes, I'd like to turn to the search incident to arrest claim. So here, the record is clear that Officer Boyd, in his incident report, said he placed Mr. Watson under arrest for failure to obey, removed Mr. Watson from the car, then searched it. Failure to obey cannot support a search incident to arrest under the Supreme Court's decision in Gant and this Court's decision in Hamburg. Appellees don't contest that fact. Could have been the basis for the search, but viewing the record in the light most favorable to Mr. Watson, Officer Boyd did not write the false statements ticket, did not have probable or arguable probable cause, even assuming he did, for the false statement ticket until after the search when he found Mr. Watson's documentation. And as Judge Shepard noted in the first appeal in footnote one on appendix page 267, the false statements ticket was written later on after the event, and so the appellees cannot point to that ticket now to retroactively justify the search into arrest. What matters, as this Court said in Webster, is you need to figure out what the offense of arrest was that justified the search. Based on Officer Boyd's own report, that offense was failure to obey. That's purely a conduct-based crime under Gant and Hamburg. That's not okay. And if you look at Officer Boyd's testimony on page 779 of the appendix, he's asked, what is a search incident to arrest? He says, I arrest someone, then I search. What are you looking for? Illegal items. So clearly he thought he could search whenever he wanted. No reasonable officer would believe that to be the law. So this Court should reverse that claim and when it reverses both the First Amendment claims and the Fourth Amendment claims, it should reverse the liability claims. And if there are no further questions, I'll reserve the rest of my time. And Counsel, have you argued in your briefs that the Court erred on the count one, dismissing the count one allegations? No. So we're only focusing on the First Amendment claims and the Fourth Amendment search into arrest. Okay. Well, if you don't appeal, if you don't appeal the issues under count one, does that affect the issues in count two that would have involved the same seizure concerns? I don't believe so, Your Honor, because I think First Amendment claims and Fourth Amendment claims are just distinct analyses. And I think this Court differentiates between the two in its case law. So you don't think that if there was arguable probable cause for the, under count one, that that could play into analysis in count two? I don't believe so, Your Honor. And the reason why is because we are not challenging all of the citations. So we admit that, for example, Mr. Watson wasn't wearing his seat belt at the time and an officer under the Supreme Court decision at water could arrest for that offense. And so there was a basis to conduct an arrest, whether a reasonable officer would or not is a separate question. But for the First Amendment claim, any ticket written with a retaliatory motive violates the First Amendment. And so that's why the two claims are distinct from each other. All right. Thank you, sir. On the First Amendment retaliation, the pointing of the weapon, isn't there an alternative explanation in that I understand your client removed his hands from the steering wheel and kind of suddenly reached for, I think he says, his phone? Does that sort of movement potentially give an alternative reason for it? Your Honor, so I don't think so. So if you look at page 49 of the record, first, Mr. Watson testified that he was reaching for his phone to call the police and viewing the evidence like most favorable to him. He told Officer Boyd that. But even putting that aside, the sequence of events is Mr. Watson reached for his phone, which was in the center console. He's told put it down. He does. Then Officer Boyd points his gun at his head and gives him the threat. So and I don't think while pointing a gun at somebody during a traffic stop may be reasonable in some instances, there's no alternative explanation for the threat that Officer Boyd issued in addition to pointing the gun. And I think that's what makes this claim clearly retaliatory, such a reversal is required. Thank you. Thank you, Mr. Harlan. Mr. Norwood. Thank you. May it please the court. Good morning. My name is Ronald Norwood and I'm appearing here and arguing today on behalf of Officer Eddie Boyd and the city of Ferguson. In entering summary judgment in favor of Officer Boyd, city of Ferguson, Judge Hamilton properly found that each of Officer Boyd's actions relating to the stop, the arrest, the vehicle search, and the ultimate charges were fully supported by probable cause and arguable probable cause, which has been acknowledged based on the fact that they haven't appealed the ruling with respect to count one. That probable cause negated any valid Fourth Amendment claim, Fourteenth Amendment claim, or First Amendment claim. Why would it affect the First Amendment claim? It affects the First Amendment claim based on the ruling by the United States Supreme Court in these. And it relates to the but for causation issue, which I will delve into in a minute. But more significantly, Judge Hamilton found that despite six years of litigation, two appeals, Mr. Watson has failed to identify any clearly established, factually analogous cases that would have been on the books in 2012 when this all went down. No controlling authority. No robust consensus of persuasive authority. That would have put or placed any of these constitutional questions beyond debate. And as the court well knows, that you have to check the two boxes. You have to find the constitutional violation, and then you have to find that clearly established factually analogous case law, which doesn't exist. Because if it did, they would have cited it over the six years of this litigation. So accordingly, we strongly believe that Officer Boyd, City of Ferguson were entitled to assembly judgment and that Judge Hamilton properly ruled. The starting point, I think, for this appeal is the 2021 appeal that we filed based upon the denial of qualified immunity. And in that opinion, the court recognized and rejected the very same arguments they're raising in this appeal, which is the issue of what was Mr. Watson's subjective intent? What was Officer Boyd's subjective intent? And this court has made clear that for qualified stated, for instance, that for probable cause purposes, for use of force purposes, reasonableness, objective reasonableness must be judged from the perspective of a reasonable officer on the scene rather than 20-20 hindsight. And in the Neves case, this court cited that it was a 2019 decision that a First Amendment retaliation claim turns on the presence or cause. That court also talked about the but-for causation issue, which I will address as well. This court also noted that in determining whether a plaintiff has provided fully established law, that law cannot be generalized law, that that law must be clear enough, must be analogous enough to the facts of the underlying case in order to put that constitutional question beyond debate. So that any reasonable officer knows that if I do this, I may be in trouble. Does the defense in this case dispute the allegation that a firearm was pulled after compliance with the officer's directive to not reach for the gun? Officer Boyd, in his testimony, denied pulling a gun. But if we assume that there was a gun pulled, the sequence of that, pulling the gun, is justified. Does he deny making the statement as well? I'm sorry? Does he also deny the statement about his willingness to, or about his ability to discharge his firearm fatally in a not manner? Officer Boyd denied that allegation. Why wouldn't those facts be the type of controversy that should proceed to be resolved before there can be a complete determination of the presence of qualified immunity? Well, here, I guess we're talking about First Amendment retaliation. And let's talk about it now, because I think it's very important. The court's decision in the Neves Appeal by the U.S. Supreme Court. And in that case, which was decided in 2019, they relied upon another Supreme Court case, the Hartman v. Moore case. And I want to read from that decision because it directly addresses the question of your honor. That case at page 1722 says, quote, it is not enough to show that an official acted with a retaliatory motive, and that the plaintiff was injured. The motive must cause the injury. Specifically, it must be a but-for cause. A but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. It's cited to the Hartman decision. And in that decision, it says, quote, action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway. So drawing the gun based upon, and I believe, your honor, Judge Smith, you were part of that panel in Clark v. Clark. It was a gun pulling case. It was a retaliation case. It was, in our case, admittedly, 10 seconds. According to the plaintiff, he pulled the gun after he grabbed the phone for some unknown reason. And looking at it from the perspective of a reasonable officer, you pull up on a car when it's getting dark. It's backed into a space, no front license plate, heavily tinted windows. He doesn't know, at that point, what he has. He approaches the vehicle. The window's cracked. It's dark inside. Ultimately, he engages and asks for compliance, drives license, registration. It's not provided. And whether or not he pulled a gun for that 10 seconds after he reached for his phone doesn't establish but-for causation. The suggestion, the only suggestion of First Amendment, is the claim that when he asked for his badge number and he didn't provide it, that somehow the retaliation was pulling the gun. But that's been lied by the fact that it was all triggered by his actions in grabbing that phone. Mr. Norwood, I think the Chief's question probably comes from the way Mr. Harwood described the situation, which was, at the moment the gun was pulled, he had-or just prior to that, he had reached, been told not to, complied, and then the gun came out. For 10 seconds, yes. Yeah. And so I think that if that's the true sequence of events, if there's no dispute about that, that's different than he reached and pulled the gun at the same time. Yes. But as this Court has recognized in Clark v. Clark, which is also a First Amendment case, until this unknown, unidentified individual driving a car with one rear Florida license plate has been identified, until the situation has been under control, he had every right to pull his gun, to train his gun, to figure out what to do with this situation, a noncompliant individual. And so based upon that, we believe- Why was he noncompliant when he did what the officer told him to do? He didn't provide his driver's license. He didn't exit the vehicle upon request. He didn't throw out his keys. He admitted his deposition. He didn't do anything. He just held on to that wheel for whatever subjective reason and refused to get out of the vehicle. What's an officer supposed to do with that? He called for backup. And this is what? He pulled the gun for 10 seconds. He re-holstered the weapon. He called for backup. He waited for backup. They begged him to get out of the car. And then ultimately and reluctantly, he got out of the car, kicked the door shut, and that was it. So those circumstances, and as this court has acknowledged, the reasonable officer's standard, this is a situation where the reasonable officer doesn't know what he has. And ultimately, he was arrested. He received this false name. I think I understand your argument. But what about the statement that, according to the plaintiff, the officer made when he pulled his gun, and that is, I could shoot you and nobody would care. Why can't a jury take that and reach the conclusion that the pulling of the gun, the pointing of the gun, had nothing to do with any action of the appellant? Well, given the sequence of events, the pulling of the gun in response to grabbing the phone, we believe that under the Neves case, under various subsequent cases by this court in the form of Clark versus Clark, which is a similar First Amendment case, recently their supplemental authority in the context of the Meaders versus Holton case suggests that you can't just create causation. You have to have evidence of causation. And in this case, pulling the gun and making a comment in response to grabbing the phone is the trigger. Had he not grabbed the phone, there would have been no need to hold a gun on him. And that's demonstrated by the fact that once he put the phone down, once he trained it on him for 10 seconds, he rehosted the gun, he asked him to throw out his keys, he didn't do it. Asked him to remove himself from the car, didn't do it. He held onto the wheel for whatever subjective reason, and we're getting to the question of what was his subjective intentions. Why didn't he pick up that phone? There was a suggestion that somehow Mr. Watson told him that he was calling the police on the police. There's nothing in the record to support that. You have an individual, unknown individual, unidentified individual who grabs a phone for whatever reason, and that justified under Clark versus Clark the pulling the gun. And with respect to the issue of causation, absence of evidence to show that it was triggered by him asking for his badge, there's nothing to support the submission of that issue to the jury. We surmise. Is there anything in the record that provides an explanation from the officer's standpoint as to why he didn't note the Florida tags on the rear of the vehicle, run the tags, discover that the vehicle was properly registered in Florida, and also discover the name of the driver? Well, that's another issue, Your Honor. It wasn't properly registered in Florida. It wasn't a proper license. Did he walk to the back of the vehicle? There's no testimony that he walked to the back of the vehicle. And what's in the record to explain why he didn't do that, to clear this up, to clear up his concerns about the registration of the vehicle? There's nothing in the record about him or why he didn't walk. What the record does suggest is that like any normal encounter, he asked them for his license and registration. He received a name, Fred Watson. He ran that through Regis. Nothing came up. And it was only afterwards when he searched the vehicle to try to figure out who he had in his patrol car when he discovered his real name, which was Freddie Watson. He provided this name. He provided a Florida address, which the undisputed testimony from Mr. Watson says he hadn't lived in Florida for seven years, yet he provided an address down in Florida. And the law is clear both in Missouri and Illinois where he did reside, is that if he resided in Florida for that two or three year period he admitted, he had an invalid license because Illinois requires him to reapply within 30 days. Missouri requires him to reapply in 30 days. It didn't happen. And the question is why? Why did he provide this name? Why did he provide this false address? And we believe that all of those circumstances that confronted Officer Boyd justified all of his actions. I'd like to briefly in the one minute I have, touch upon the issue of the automobile search, which has been addressed specifically by this court in United States v. Campbell Martin. And I believe Judge Grunder and Judge Smith, you were both on that decision. It was a school parking lot situation and a backpack search where individuals provided false names and once the officer realized they provided false names he arrested them, he searched, I believe he found some meth, but in the process he also found evidence that identified their true identities and this court held that that was a valid search incident to arrest and we believe that's exactly what we have in this case. Was he searched for the false name? Was he arrested based on the false name? And is it, two questions, and is it sufficient to be a false name when he just gives a shortened form of his actual name? It's sufficient if the officer, and in fact there is testimony in the record that Mr. Watson knew that this name wouldn't come up in the database. But be that as it may, when he checked that name and didn't find it in the system and then found his real name, Freddy Watson, and plugged that in the system, voila, we have information regarding him and what he found was that he had a Missouri license at one point, the record didn't show he was surrendered, which is what is required to get a valid Florida license, and that's what he had and that was the basis for his charges. He didn't, the Florida tags on his vehicle, were they expired? There's no suggestion that he had expired tags. So the officer, so it's the role of the officer to make the legal judgment about this business of the Missouri tags being turned in and properly turned in in the past, I'm not sure I follow what role the officer would have in getting into all of that at that point. Well, again, what the Regis reading showed is that we had a Missouri individual with a Missouri license, but no surrender of that license which would justify any registration or new license in the state of Florida. That's what he relied on, according to his testimony. Thank you. Thank you, Mr. Millward. Mr. Hallward, your bill. Yes, thank you, honors. I'd like to clear up the timeline in the light most favorable to Mr. Watson. So Officer Boyd approached Mr. Watson, asked him for a social security number, not his license or his registration. Officer Boyd then said he could be a pedophile. Mr. Watson saw Officer Boyd becoming increasingly hostile, told Officer Boyd he was reaching for his phone to call other police officers to the scene. That's the appendix, page 409. Officer Boyd told him, put the phone down. He did. Officer Boyd then pointed his gun and said, I could shoot you. Then Mr. Watson kept his hands on his wheel from that point forward. He did not move until backup came. Officer Boyd removed Mr. Watson from the car, handcuffed him, put him in the back of the Then searched his car. At that point, he had not run his name. He had not done any kind of search. And so the idea that this search was based on false statements is not supported by the record. Also, this idea, my friend points to the fact that Mr. Watson may have moved from Florida at the time of the search. First of all, they only learned that during the course of this litigation. And as Judge Grunder said in his dissent a few months ago in Meters, what matters for probable cause is what the officer knew at the time of the search. That's what this court said in Amrine. That can't be the basis for the false statements charge. And in your honors, just taking a step back, this is an officer who has a documented history of falsely reporting on people. It is his MO. He writes tickets when somebody challenges him. He writes these tickets and that is how he tries to get out of his misconduct. No reasonable officer would think it's okay under the First Amendment for me to threaten to shoot you. No reasonable officer would think, as Officer Boyd said here, that I can search a car anytime I arrest the driver. No reasonable officer would think that somebody can't be in Missouri with a license from another state. And so your honors, I know we give police a lot of leeway. I know it's a hard job, but Officer Boyd is a quintessential example of the bad apple and qualified immunity should not protect his conduct here. And respectfully, we ask this court to reverse. Thank you. I see no questions. Thank you, Mr. Holloway. Thank you also, Mr. Millward. The court appreciates both counsel's argument. To us, clarifying the briefing that's been submitted, we will continue to study the record and render a decision. The counsel may be excused. Thank you.